IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2000 Session

## JOY FORD v. DANNY HUMPHRES

**Appeal from the Circuit Court for Coffee County**
**No. PW94-21     John W. Rollins, Judge**

**No. M1999-00423-COA-R3-CV - Filed November 22, 2000**

This appeal involves a dispute over the estate of Ms. Thelma Humphres, who was found by the trial court to have died intestate owning a one-half interest in her home and the approximately twenty acres on which it was locataed.  She also owned some personal items which sold for $1,355.50. Appellant, Joy Ford, one of Ms. Humphres eight children, believed that Ms. Humphres had executed a will leaving her mother's entire one-half interest in the home and property to her.  Ms. Ford objected to the administration of her mother's estate by her brother, Appellee, Danny Humphres, and attempted to prove a lost will.  Ms. Ford failed to prove a lost will, and the property was subsequently sold to pay the estate's debts.  As Ms. Ford owned the other one-half interest in her mother's property, she objected to the sale of this property.  She also objected to the allocation of costs and fees related to the sale and the general administration of her mother's estate.  All of her objections were overruled.  She now appeals the trial court's actions in these matters.  We affirm the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which and BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Nan Shelby Calloway, Nashville, Tennessee, for the appellant, Joy Ford.

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the appellee, Danny Humphres.

OPINION

I.     FACTS

Thelma Humphres ("Ms. Humphres") died in March of 1993.  Her son, Danny, the appellee petitioned to be, and was, appointed administrator of her estate.  He alleged that Ms. Humphres died without a will, and in February of 1994, the court issued an order appointing Danny the personal representative of Ms. Humphres' estate.

Joy Ford ("Appellant") filed a claim against the estate for $12,000.00 requesting reimbursement for funeral expenses she had paid. Danny, as administrator, filed an exception to this claim stating that it was overstated and inappropriately documented. The court initially denied Appellant's claim against the estate finding it to be unsubstantiated; however, after Appellant provided additional documentation, the court eventually allowed her claim but reduced the amount to $3,862.00.

After Appellant's $12,000.00 claim against the estate was denied, she filed a motion to have Danny removed as the administrator claiming that he destroyed the will of Ms. Humphres. Attached to this motion was the affidavit of Pamela Cooper. Ms. Cooper claimed that she often visited Ms. Humphres and that Ms. Humphres told her that Appellant was to get the home and property because she had purchased it for her parents. Ms. Cooper also claimed that Ms. Humphres showed her a will which she kept in her Bible. This will provided for Appellant to receive the house and property. The affidavit further stated that another person told Ms. Cooper she had also seen the will and that the land was to go to Appellant.

Appellant alleged that she also knew of the will and that it left the property to her. Appellant had initially purchased the property for her parents retaining a one-half interest in the property and giving a one-half interest to her parents. She believed that her brother, Danny Humphres, had destroyed this will following their mother's death.

Over the course of almost six years spent fighting over this estate, many motions were filed by both parties including requests for restraining orders, motions for contempt, motions to reconsider, motions to alter or amend, motions to remove administrator, and motions regarding the fees and expenses of the estate. As a result of this ongoing litigation and the prior claim filed by Appellant, as a creditor, the estate could not pay its debts out of the sale of the personal property alone.

In July of 1995, Danny filed a Petition for Order Allowing Sale of Real and Personal Property of the estate. The court entered an order granting permission to sell the property in September of 1996. The real and personal property was sold at an auction on June 13, 1998. The personal property brought $1,355.50. The real property was eventually purchased by Joy Ford for $57,200.00.

At the time of the sale, Appellant already owned a one-half interest in the property. She alleged that four of the seven remaining children recognized her right to the entire property and would deed their interest in the property to her. With regard to distribution of the estate and allocation of the attorney fees and expenses the court issued the following order:

> This cause came to be herd on the 5th day of March, 1999 upon the Court's motion regarding the amount of sale proceeds to be deposited with the Court and the Administrator's Motion for Fees and Expenses. After hearing the statements and

stipulations of counsel and considering the record as a whole the Court decrees as follows:

1) The sales price of the property is $57,200.00 which is attributable ½ to the interest of Joy Ford and ½ to the interest of the Estate of Velma Humphres. Joy Ford has paid into the Registry of the Court 10% of this amount or $5,720.00.

2) That the sales commission totaled $3,432.00 which has been paid by the Clerk and Master from the down payment on the real estate.

3) That the attorney's fees of the executor devoted to the partition action and sale are $1,597.50 (17.75 hours x $90.00 per hour).

4) That the sales commission and attorney's fees devoted to the partition action should be borne ½ by Joy Ford's interest and ½ by the estate of Velma Humphres.

5) That Joy Ford shall pay in to the Registry of the Court the sum of $21,532.35 representing ½ of the sales price ($28,600.00) plus ½ of the sales commission ($1,716.00) and ½ of the attorney's fees attributable to the partition action ($798.75) less her allowed claim of $3,862.40 and down payment of $5,720.00.

6) That the executor's expense for the phone bill, Duck River bill and Caldwell Auto Parts bill are not allowed as Ms. Ford advised the Court she had paid same. The remainder of fees and expenses in the executor's petition are allowed.

7) That the Administrator has no funds as they are or will be in the Registry of the Court therefore the Administrator and the surety on the Administrator's bond are released.

8) That from the sum of $21,532.35 paid into the Registry of the Court, and the amounts already in the Clerk's hands the Clerk and Master shall pay the following Administrative expenses:
   A) To Bush Insurance                     $ 1,281.36  for bonds
   B) To Danny Humphres                        640.00  for advanced bond costs
   C) To Haynes, Hull, Rieder & Ewell        5,976.50  attorney's fees
   D) To Danny Humphres                      4,000.00  executor's fees
   E) The Court costs

9) That the allowed claim of Joy Ford is satisfied by the credit given to her against the sales price of the estate's ½ interest in the real property.

10) That the expenses of administration exhaust all proceeds of the sale of personal property thus all remaining sums are proceeds of the sale of the real estate.

11) The Clerk is to divide the remaining sum by 8, the number of heirs at law of Velma Humphres and pay such sum to:

| Danny Humphres | Diana Crouch |
|---|---|
| Linda Crafford | Roger Humphres |
| Joy Ford | Debra Humphres |
| Dennis Humphres | Richard Humphres |

If Joy Ford files with the Clerk a certified copy of a recorded Quitclaim Deed, to her from any of the above listed heirs, the Clerk and Master shall pay the amount apportioned to such heir to Joy Ford.

12) That upon the occurrence of the foregoing the estate of Velma Humphres be closed.

## II.     ISSUES PRESENTED ON APPEAL

Appellant now appeals three issues to this Court. She first contends that her brother, Danny, should have been removed as administrator of the estate and that she should have been permitted to prove the existence of a missing or destroyed will. Secondly, she argues that the court should have determined that the property was capable of division, thus, the real estate should have been partitioned in kind. Finally, she takes issue with the assessment of attorney fees, administrator fees, and other costs against her property and the estate alleging that these expenses were not incurred for the benefit of the estate. But, even if the fees were permissible, no costs and attorney fees should have been assessed against her half of the real estate, as it was her separate property and not a part of the estate.

## III.     DISCUSSION

1. Failure to consider the issues of lost will and removal of the administrator.

In order to establish a lost will the following facts must be proven: 1) that a valid will was executed in accordance with the forms of law; 2) the substance or contents of the will; 3) that the will has not been revoked; and 4) that it is lost or cannot be found after diligent search or has been destroyed. *In re: Estate of West*, 729 S.W.2d 676, 678 (Tenn. Ct. App. 1987); *Shrum v. Powell*, 604 S.W.2d 869, 871 (Tenn. Ct. App. 1980). Further, "the fact that a will cannot be found after a due and proper search raises a presumption that the testator himself destroyed the will." *Estate of West*, 729 S.W.2d at 678. Thus, to prove a lost will, this presumption must be overcome. "[T]he one seeking to establish a lost will must prove that the testator did not have custody and control of the will after execution, or that he had lost his testamentary capacity for a period before his death and that the will was in existence at the time the loss of competency occurred." *Id.* Further, these facts must be shown by the "clearest and most stringent evidence." *Shrum*, 604 S.W.2d at 871.

In this matter, the appellant failed to even make a *prima facie* case for a lost will. There was no testimony that the will was validly executed, nor was there any evidence that the will was in existence at the time of the testator's death and had not been revoked by the testator.

In reviewing the determination by the trial court in this matter, there is a presumption of correctness. The rulings will be affirmed unless there is evidence which preponderates against the trial court's judgment. Tenn. R. App. P. 13(d). We see no such evidence which preponderates against the judge's rulings regarding the establishment of the lost will or his decision not to remove the administrator, as the court found no evidence of improper actions on the part of the administrator.

In addition, the appellant alleges that she was not allowed to establish her claim for lost will. We find this allegation to be totally false. The court, on 15 September 1995, entered an order allowing the parties 45 days to file a legally sufficient pleading to set up a lost will, but no further action was taken by Appellant. She cannot now complain, as her failure to file this additional pleading, or assert that the pleadings filed were sufficient, constituted a waiver of the issue.

2. The partition and sale of the real estate.

Appellant objected to the sale of the real estate complaining that the estate was not insolvent and that the court did not make a proper determination that the property could not be partitioned in kind and that the sale was in the best interest of all parties.

With regard to the solvency of the estate, we can say most assuredly that the estate was indeed insolvent, and insolvent due to the actions of Appellant herself. Without the property, the total assets of the estate brought only $1,355.50. Joy's initial claim against the estate was for $12,000.00. Although this amount was later reduced to $3,862.40, her allowed claim was still much more than the assets available to pay the estate's debts without sale of the property. Add to this amount all costs of litigation over Appellant's various claims and motions, and the debts of the estate mounted to an amount that required sale of the estate's remaining asset.

The matter of the sale for partition was the subject of a hearing in the trial court. The trial judge ordered the sale after this hearing; however, we have no way to review the determinations of the trial court, as no adequate record was prepared and submitted to this Court for review.

It is the appellant's duty to prepare an adequate record to allow meaningful review on appeal. Tenn. R. App. P. 24(b). Yet in this case, no transcript was prepared nor was a statement of the evidence presented. In such a circumstance, the appellate court must presume all findings of fact by the trial court are correct. "[T]he absence of a transcript of the [] hearing or a proper statement of the evidence means the facts found by the trial court are conclusively presumed to be correct. . . . [F]ailure to satisfy [this] burden of arranging for a transcript of the proceedings or filing a certified statement of the unrecorded proceedings in compliance with Tenn. R. of App. P. 24(c) binds us to that presumption. *Humphrey v. Humphrey*, No. 01-A-01-9802-CV-0010, 1999 WL 452318 at * 2 (Tenn. Ct. App. July 1, 1999). Thus, we presume that all factual findings made by the trial court are correct. *Id.* at * 3.; *see also Williams v. Williams*, No. 01A01-9710-CV-00566, 1999 WL 93587, (Tenn. Ct. App. Feb. 25, 1999).

The technical record provided to this Court does not contain any evidence regarding the factors which may have been considered by the trial court. In the absence of a transcript or statement of the facts, we must presume that the findings of the trial court in this matter are correct and that sale of this property, as opposed to partition in kind, was the proper determination.

3. Allocation of expenses and attorney fees regarding sale of the property.

Upon review of the facts in this case and the court's order allocating fees and expenses, we find the court's decision to be very well reasoned and fair to all parties involved. Danny, the administrator, was acting on behalf of the estate. The need for sale of the estate is obvious and was the result of Appellant's own actions in pursuing groundless litigation in this matter. Appellant attempts to assert that Danny was acting on behalf of only himself and his 1/16th interest in the property; however, this forgets the other two siblings that did not wish to deed their property over

to Appellant and who also had a stake in the outcome of this matter.  Regardless of the feelings and beliefs of the siblings, Ms. Humphres died intestate, and thus, administration of the estate was necessary, and the costs of that administration had to be paid.

The decision to award fees and expenses is largely at the discretion of the trial court.  *Chaille v. Warren*, 689 S.W.2d 173, 180 (Tenn. Ct. App. 1985).  We see no abuse of discretion and agree with the trial court's determination in allocating the fees and expenses of this matter.

IV.    CONCLUSION

Appellant filed a request to remove the administrator and set up a lost will which, after six years of litigation with absolutely no proof, borders on frivolous.  In addition, her insistence on fighting this losing battle resulted in the sale of the property and the fees and expenses incurred therefrom.  We, thus, affirm the trial court's finding, as the evidence does not preponderate against the trial court's decision not to remove the administrator nor its finding of insufficient evidence to establish a lost will.  Further, we must presume that the trial court's decision to sell the property was correct, as we have no record on which to review the factual determinations of the trial judge.  Finally, we find no abuse of discretion and affirm the trial court's decision regarding allocation of all fees and expenses.

_____
WILLIAM B. CAIN, JUDGE